HERNDON ET AL., APPELLANTS v. HAWKINS ET AL.

County Seat, Destruction of: JUDGMENT RENDERED AT TEMPORARY SEAT. If it appears by the record of a judgment that the court, which pronounced it, had jurisdiction of the person of the defendant, and of the subject-matter of the suit, such judgment will not, in a collateral proceeding, be held void upon proof being made that it was rendered at a place other than the established seat of justice of the county, when it is shown that all the houses at the latter place had, before the rendition of the judgment, been destroyed by fire, and that the county court had accepted, as a temporary seat of justice, the place at which the judgment was rendered.

*Appeal from Ozark Circuit Court.*—HON. J. B. WOODSIDE, Judge.

*E. Y. Mitchell* for appellants.

The court erred in excluding the deed from the sheriff to Sherwood and Julian. There was no house at the county seat when the judgment was rendered. The county court had ordered the sheriff to select a suitable place for holding the courts, until buildings could be erected at the

county seat. The sheriff swore that, in obedience to this order, he selected the place, and reported the same to the county court, and the judgment was rendered at that place. The record also shows that the court, at which the judgment was rendered, had been regularly adjourned from the county seat to the place where it was rendered. The court having passed on the matters in issue, when the judgment was rendered, the same cannot be attacked collaterally. *Kane v. McCown*, 55 Mo. 181; *Bouldin v. Ewart*, 63 Mo. 330. The county court having ordered the sheriff to provide a place for holding court, it will be presumed that that court properly exercised the authority conferred by law, see Gen. Stat. 224, § 36. None but the most cogent reasons should induce this court to depart from that conservative principle, which the most eminent jurists have ever observed, when the jurisdiction of tribunals possessed of every appearance of authority and clothed with every semblance and insignia of power, is collaterally called in question. *State v. Douglass*, 50 Mo. 593. When a want of jurisdiction actually exists in a domestic tribunal of general jurisdiction, and is not apparent upon the record, the appropriate mode of ascertaining it is by writ of error, and, until it is so ascertained, the judgment imports absolute verity. *Granger v. Clark*, 22 Me. 128. See also, *Galpin v. Page*, 18 Wall. 350; *Hahn v. Kelly*, 34 Cal. 392; *Huxley v. Harrold*, 62 Mo. 516; *Hunter v. Ferguson*, 13 Kans. 462.

*Waddill & Crandell* for respondents.

The judgment recited in the deed offered in evidence by appellants, was rendered at a place unknown to the law, and different from that fixed by law, viz: "Both the circuit and county courts in the several counties in this State shall be held at the county seat of each respective county." Laws 1866, p. 83, § 1.

NORTON, J.—This is an ejectment suit instituted in the

circuit court of Ozark county against the defendants, as the heirs of S. H. Hawkins, for the recovery of the possession of certain lands described in the petition. The answer of defendant denies the right of plaintiffs to the possession of said lands, and alleges that the sheriff's deed under which plaintiffs claim, was a false and fraudulent deed; that the judgment and execution against one Crawford Brixley, under which said land was sold, was a false, fraudulent and void judgment; that the order of publication issued and published, required said Crawford Brixley to appear before the circuit court of Ozark county on the 4th Monday in February, 1865, at the court house in Gainsville, the county seat of said county; that there was no term of the circuit court to be held at Gainsville at that time, as plaintiffs well knew; that on the 31st day of August, 1865, at a term of the court held at Spring Creek school house, in Ozark county, an interlocutory judgment was entered against said Brixley, and, at a subsequent term of said court, held at the house of S. I. Forest, in said county, the plaintiff, Herndon, fraudulently obtained and entered upon the records of said court a final judgment against said Crawford Brixley for the sum of ten thousand dollars; that upon this judgment a special execution was issued, and the lands sued for were sold, and plaintiffs purchased the same for the sum of $30, and received a sheriff's deed; that one S. H. Hawkins, the ancestor of defendants, bought, in his life time of said Brixley, all the lands in dispute, and received a deed for the same; that said Brixley had a perfect title to said lands, and prays the court to declare the sheriff's deed, and the proceedings on which it is based, null and void.

The allegations of the answer were denied by replication, and upon a trial of the same, the court having refused to admit in evidence the sheriff's deed to plaintiffs for said lands, they took a non-suit with leave to move to set the same aside. An unsuccessful motion was in due time made to set aside the judgment of non-suit and grant

a new trial, and the cause is brought to this court on appeal. The chief error complained of is as to the action of the court in refusing to admit the sheriff's deed offered by plaintiffs in evidence. The history of the case, as shown by the record, discloses the following facts : In September, 1864, S. C. Herndon instituted his suit by attachment against one Crawford Brixley, upon which was issued a writ of attachment, including a clause summoning the defendant to appear and answer the action at the next term of the circuit court of Ozark county, to be held in Gainsville, on the 4th Monday in February, 1865. Upon the affidavit of plaintiff that the defendant had absented himself from his usual place of abode in this State, an order of publication was made and published in the Springfield *Journal*, notifying defendant of the pendency of the suit and the character of it, and also notifying him to appear at the next term of the circuit court to be held in Gainsville on the 4th Monday in February, 1865. This term of court appears not to have been held, as the record seems to be silent in regard to it. The regular August term, 1865 was, upon the order of ――― Boyd, Circuit Judge, adjourned by proclamation made by the sheriff on the first day of said August term from Gainsville, which was the county seat, to Spring Creek school house. At this latter place an interlocutory judgment was rendered at that time against the defendant Brixley, and the cause continued. On the 6th day of October, 1866, R. W. Fyan, Judge, ordered the sheriff by proclamation to adjourn the circuit court of said county from the third Monday in October, 1866, to the second Monday in December, 1866, and on the second Monday of December, 1866, said court was, by his order, adjourned from Gainsville to meet on the same day at the house of S. I. Forrest. On the eighth day of October, 1866, the county court of said county ordered and directed the sheriff of said county to select and rent a house for the purpose of holding the courts of the county in, as near as practicable to the county seat, there being no house in

Gainsville, the county seat, where the court could be held, all the houses in said town having been burned or destroyed during the war. In obedience to this order the said sheriff selected the house of S. I. Forrest as the most suitable and convenient place, and during the October adjourned term, 1866, held at the latter place on the second Monday in December, 1866, the final judgment was rendered, upon which an execution subsequently issued, under which the lands in controversy were sold at the court house door, at the October term, 1867 of said court. It is insisted by defendants that, inasmuch as it is shown by the record that the circuit court of Ozark county, where the judgment was rendered, was not held at Gainsville, the county seat designated by law as the place for holding it, but was held at the house of S. I. Forrest, fourteen miles distant therefrom, the judgment so rendered is void. The correctness of the general proposition that when the record affirmatively shows that a judgment in a cause was pronounced at a time and place where the law did not authorize the holding of court, such judgment will be held to be a nullity, is unquestioned. There is no dispute in this case as to the power of the judge under the law to hold the court at the time it was held, but his power to hold it at the place where it was held is denied. The question is not free from doubt and difficulty, and has not before been directly presented to this court, nor is such a case as the facts before us disclose expressly provided for by statute. It is provided in Chap. 40 Wag. Stat. 394 that, when a new county is organized, as soon as convenient buildings can be had, or a court house and jail are erected at the established seat of justice, the courts of such county shall be held at such seat of justice; and until such convenient building can be had, or a court house and jail erected, such court shall be held at such places as the county tribunal transacting county business shall determine. When such tribunal determines the places at which such courts shall be held, and causes proclamation to be made at the court

house door, that the courts thereafter will be held at such place, and if the place so selected shall not be the established seat of justice, the courts to be held in such county shall as soon as the court house and jail are erected, or sooner, if the tribunal transacting county business shall deem it expedient, be removed to and thereafter held at such established seat of justice. It is also provided in Art. 2 Chap. 40 Wag. Stat. 402, that when the seat of justice of any county shall be removed " as soon as convenient buildings for the holding of courts, together with a good and sufficient jail, can be had at such new seat of justice, the county court shall notify the judges of the several courts holden in the county at the next term thereof, who shall cause the sheriff to make proclamation at the court house door, in term time, that such courts will thereafter be held at the place so selected." It is manifest from the above provisions of the law that, as a condition precedent to the holding of courts at the seat of justice of a county, some place to hold them in must be provided by the county tribunal charged with that duty, and that, until such provision is made, the courts might legally be held at any other place or places in the county designated by the county tribunal. But it is said that the case at bar does not arise under the statute relating to the organization of new counties, nor to the removal of seats of justice, and is, therefore, not embraced within their provisions. While it is true, the case we are considering is not embraced within the letter of the act, it is by the spirit of it, that spirit being to authorize the county tribunals to provide a place other than the seat of justice until suitable buildings or a court house and jail can be provided, in which the courts can or may be held. The law does not require impossibilities. It imposed the duty on the judge of the circuit, which included Ozark, to hold his courts in that county at stated terms. This duty could not be performed by holding his courts in Gainsville, the seat of justice, because there was neither court house nor any other house

in that town in which they could be held. It does not appear, except inferentially, that a court house had ever been erected in Gainsville, and the presumption might well be indulged, from the action of the county court in October, 1866, in ordering a suitable place to be selected and rented as near the county seat as practicable, in which to hold the courts of the county, that no court house had been provided or erected. The record shows that the county court did act in this matter, and directed the place to be selected by the sheriff in which to hold the courts of the county; that the place selected by him was approved by the court; and that the court, at which the judgment in question was rendered, was held at the place thus selected and approved. To hold that a judgment rendered at such terms was absolutely void would be to reverse the rule of presumption, and presume that jurisdiction of the person and subject matter having been acquired, everything was irregularly, instead of regularly, transacted. In the case of *Bouldin v. Ewart*, 63 Mo. 330, which involved the validity of a sale made by the sheriff at the court house door in Georgetown after the passage of an act of the legislature removing the seat of justice to Sedalia, Judge HOUGH, in delivering the opinion, observed: "If, in some litigated cause the jurisdiction of the court to hear and determine causes at Georgetown, had been questioned in consequence of this act, and the court had adjudicated that its session was properly held there, could such determination be attacked collaterally? We think not. In our opinion the proceedings and judgments of the court at its session in Georgetown, have precisely the same validity and force which they would have had, if the right had been formally and solemnly determined. The very fact of holding the court there necessarily implied a judicial assertion of the right to hold it. It was a *de facto* court, and its proceedings were not void, even should it be conceded that its session was at a place unauthorized by law." The objections urged by defendant to the admissibility of the deed in evidence only

go to irregularities and not the validity of the proceedings on which it is based, and should therefore have been over-ruled. Judgment reversed and cause remanded, the other Judges concurring, except Sherwood, C. J., who did not sit, being a party to the suit.

REVERSED.