JOSEPH B. ABRAMS, trustee, *vs.* HAROLD BURG.

Norfolk. January 8, 1975. — May 2, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & WILKINS, JJ.

*Divorce,* Separation agreement. *Bankruptcy.*

Where under a separation agreement all obligations to make pay-
    ments or to transfer property to the wife were absolute, unaffected
    by the death of either party or the remarriage of the wife, and
    where the agreement was silent on the subject of support payments
    for the wife, while providing for support payments for minor chil-
    dren, a property settlement, rather than support and maintenance
    of the wife, was intended and the husband's discharge in bank-
    ruptcy released him from unsatisfied obligations to the wife under
    the separation agreement. [619-622]

BILL IN EQUITY filed in the Probate Court for the county of Norfolk on September 27, 1971.

The suit was heard by *Fox, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Thomas R. Murtagh* for the defendant.

*Robert T. Abrams* for the plaintiff.

WILKINS, J. The plaintiff seeks to enforce certain obligations in a separation agreement, entered into on December 30, 1960, between the defendant, his then wife and trustees acting for the husband and the wife, respectively. Subject to the wife's obtaining a decree absolute of divorce by September 30, 1961, the husband agreed to make certain transfers and payments to or for the benefit of the wife and to carry out certain provisions relating to the support and education of two minor children. A decree absolute was obtained seasonably, and the obligations of the separation agreement became effective.

On January 30, 1969, before all of the husband's obligations under the separation agreement were satisfied, he filed a petition in bankruptcy. His discharge was granted on December 1, 1970. This proceeding to establish the husband's debt was commenced thereafter by the wife's trustee. The defendant argues that his unsatisfied obligations under the separation agreement were discharged in bankruptcy.

The judge heard the case on documentary evidence. No testimony was offered to explain or modify any of the terms of the separation agreement. He ruled that the husband's unsatisfied obligations were not discharged in bankruptcy. The husband appeals from a final decree which was entered accordingly. [1]

---

[1] Because the case is before us in the same posture as it was before the judge below, no special consideration need be given to the statement in his findings, rulings and order for decree that "it was the intent of the parties . . . to provide for the maintenance and support

The applicable principles of law are not in significant dispute. Section 17a of the Bankruptcy Act provides that "[a] discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . except such as . . . are . . . for alimony due or to become due or for maintenance or support of wife or child . . .." See 11 U. S. C. § 35 (a) (Supp. V, 1965-1969), 11 U. S. C. § 35 (a) (1970). Although a marital property settlement obligation to a former spouse is discharged in bankruptcy, an obligation to provide maintenance and support for that former spouse is not. See 1A Collier, Bankruptcy, par. 17.19 (14th ed. 1975).

When a party claims that obligations expressed in a separation agreement have been discharged in bankruptcy, the agreement must be analyzed to ascertain whether it provides merely for a property settlement or embodies as well a legal obligation to support the other spouse and is, therefore, a provision for maintenance and support. *In Re Alcorn,* 162 F. Supp. 206, 209 (N. D. Cal. 1958). *Yarus* v. *Yarus,* 178 Cal. App. 2d 190, 195-196 (1960). Although each agreement must be construed to ascertain the parties' intentions, the cases tend to find that maintenance and support was intended where the form of the payments more closely approximates a normal support arrangement, rather than a lump sum settlement payment. Thus, if the obligation terminates on the death or remarriage of the recipient spouse, or on the death of the donor spouse, and if the obligation is payable in instalments over a substantial period, courts tend to rule that maintenance and support, and not a property settlement, was intended. Anno. 74 A. L. R. 2d 758 (1960).[2] In

of" the wife and minor sons. The judge's sparse findings do not indicate the basis for his conclusion concerning the parties' intent. In the circumstances, his conclusion must have been a ruling of law based on his reading of the separation agreement.

[2] Compare (a) cases interpreting the husband's obligation as maintenance and support: *Battles* v. *Battles,* 205 Okla. 587 (1952) (lump

any event, the judicial task, to which we now turn, is to ascertain the intention of the parties from the separation agreement.

The provisions of the separation agreement for payments to the wife are expressed solely in terms of the distribution of property. Although support for the minor children is mentioned and provided for, there is no mention of support for the wife. Subject to the entry of a decree absolute of divorce, the wife was to receive $125,000 and ownership of winter and summer homes, free of mortgages. Additionally she was to receive

---

sum to purchase a home for the wife); *Lyon* v. *Lyon*, 115 Utah 466 (1949) (absolute obligation to pay $5,000 in monthly instalments of at least $50); *Erickson* v. *Beardall*, 20 Utah 2d 287 (1968) (payments on loans for household and automobile expenses); *Myhers* v. *Myhers*, 6 Cal. App. 3d 855 (1970) ($300 a week for 121 months unless wife dies or remarries); *Sloan* v. *Mitchell*, 28 Cal. App. 3d 47 (1972) (monthly payments of $500 during their joint lives, unaffected by the wife's remarriage); *Henson* v. *Henson*, 366 S. W. 2d 1 (Mo. App. 1963) (instalments on mortgage on family home); *Kadel* v. *Kadel*, 21 Ohio Misc. 232 (Common Pleas 1969) (lump sum ordered under alimony statute for value of wife's interest in a corporation); *Poolman* v. *Poolman*, 289 F. 2d 332 (8th Cir. 1961) (instalments on mortgage on family home); *Martin* v. *Henley*, 452 F. 2d 295, 300-301 (9th Cir. 1971) (monthly payments to wife for life, even though described in the agreement as "a division of community property rights and not support to the wife"); *In Re Alcorn*, 162 F. Supp. 206 (N. D. Cal. 1958) (agreement to pay $50 each month until his death or the death or remarriage of the wife), with (b) cases interpreting the husband's obligation as a property settlement: *Holloway* v. *Holloway*, 69 Wash. 2d 243 (1966) ($5,000 payable in $100 monthly instalments, denominated by parties as a settlement of property rights); *Tropp* v. *Tropp*, 129 Cal. App. 62 (1933) ($50,000 payable in ten annual instalments without regard to wife's remarriage, under agreement also calling for monthly payments until the wife's remarriage); *Fernandes* v. *Pitta*, 47 Cal. App. 2d 248 (1941) (five notes payable annually; claim for maintenance and support expressly released in the agreement); *Yarus* v. *Yarus*, 178 Cal. App. 2d 190 (1960) (lump sum payment in monthly instalments, described as solely by way of property settlement, payable without regard to husband's death); *Goggans* v. *Osborn*, 237 F. 2d 186, 189-190 (9th Cir. 1956) ($26,000 payable in $500 monthly instalments as part of dissolution of partnership).

$88,000, payable in instalments of $8,000 annually for eight years and a final instalment of $24,000.[3]   Finally, she was to receive $40,000 on January 15, 1967.   The husband was given the right to pay $100,000 on or before December 31, 1962, in full discharge of his deferred obligations to pay principal amounts.   If the husband died, his obligations would become the obligations of his estate.   He was obliged to maintain insurance while those obligations were unsatisfied.   The obligations to the wife would not terminate on her death or remarriage.   There was a statement of intention that all payments under the agreement were to be tax free to the wife, and the husband agreed not to claim any payments to the wife as a tax deduction.

On this record, we are constrained to rule that the unsatisfied obligations of the husband were discharged in bankruptcy because they were not obligations for maintenance and support of the wife.   We think that there is significance in the fact that the agreement is silent on the subject of support payments to the wife, while providing support payments for the minor children.   All obligations to make payments or to transfer property to the wife are absolute, unaffected by the death of either party or the remarriage of the wife.   The only feature of any of the payments which has any of the traditional aspects of support payments is the obligation to pay $88,000 in nine annual instalments.   This provision, however, seems intended to represent a deferred payment plan, rather than a program for periodic support payments to the wife, because the obligation could have been discharged by the payment of a discounted sum by the end of 1962.

Although we infer that the discharge of the husband's obligation to support his wife may have been involved in the negotiation of the settlement agreement, that circum-

---

[3] This proceeding was brought to collect the two final instalments, totaling $32,000.

stance cannot overcome the clear language of the agreement. Nor may the plain words of the agreement be disregarded simply because all references to maintenance and support may have been excluded from the agreement in order to assure the desired income tax consequences. See *Yarus* v. *Yarus,* 178 Cal. App. 2d 190, 203 (1960). In fact, the provision that none of the payments to the wife was intended to be taxable to her reinforces the view that these payments were not for maintenance and support.

The final decree is reversed and a judgment shall be entered dismissing the petition.

*So ordered.*